**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suhayb Mustafa,<br><br>　　　　　Plaintiff,<br>v.<br><br>United States of America,<br><br>　　　　　Defendant. | CV 24-00150-TUC-CKJ (MAA)<br><br>**ORDER** |

This matter was referred to the Magistrate Judge to resolve a discovery dispute over the government's disclosure of two redacted email messages. Doc. 46. The plaintiff filed his opening brief on April 25, 2025. Doc. 48. On May 1, 2025, the government filed a response brief and sent the two email messages in unredacted form directly to the Magistrate Judge for *in camera* inspection. Doc. 49, p. 1, n. 1. The plaintiff filed a reply on May 9, 2025. Doc. 50

Background

The plaintiff in this action, Suhayb Mustafa, was apprehended by Border Patrol Agents 300 yards north of the U.S.-Mexico border on September 7, 2021. Rule 26(f) Report, Doc. 13, pp. 2-3. He had no identification, but he stated that he was a Somalian national and 17 years of age. *Id*. The government subsequently determined that Mustafa was an adult and housed him with other adults. *Id*. p. 2. On January 25, 2022, Immigration and Customs Enforcement released Mustafa to Casa Alitas, a migrant shelter in Tucson, Arizona. Complaint, Doc. 1, ¶ 52.

Mustafa brings an action pursuant to the Federal Tort Claims Act ("FTCA"). Doc. 1. He asserts that he was improperly housed as an adult between December 16, 2021, and January

25, 2022, a total of 40 days. Doc. 1, ¶ 53. He claims that the defendant's actions constitute false imprisonment, negligence, abuse of process, and intentional infliction of emotional distress. *Id*. p. 2.

Discussion

In the course of discovery, the government disclosed a chain of two redacted emails. The first was sent on February 9, 2022, by Laura Kiesler, Federal Field Specialist of the Office of Refugee Resettlement ("ORR"). Response Brief, Doc. 49, p. 2. The email was sent to Janeth Sanchez, an ORR employee, and Ivonne Velasquez, her supervisor at ORR. *Id*. The email subject line states: "FW: age redetermination memo." Opening Brief, Doc. 48, p. 6.

Kiesler wrote as follows: "Janeth and Ivonne, OGC ["Office of General Counsel"] has requested [redacted]. Thanks, Laura." Doc. 48, p. 6.

The second redacted email in the chain was sent the next day on February 10, 2022, by Sanchez to her supervisor Velasquez. Doc. 48, p. 6. Attached was "Redetermination Memo SM 0297 signed.pdf." *Id*. Sanchez wrote: "Hi Ivonne, [redacted]. Thank you, Janeth Sanchez." *Id*.

Mustafa maintains that the two emails should be disclosed in unredacted form. Doc. 48. Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), "A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents. . . ." The Magistrate Judge ordered the parties to submit briefs on the issue without requiring Mustafa to file a formal motion to compel. Doc. 47.

The government asserts first that the emails are not discoverable because they are not relevant. Doc. 49. The government argues in the alternative that the redacted portions are not discoverable because they are protected by the attorney-client privilege or the work-product doctrine. Doc. 49.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Assuming without deciding that the emails are relevant, and after having considered the contents of the unredacted emails *in camera*, the court finds that they are protected by the attorney-client privilege and the work-product doctrine.

Mustafa does not explicitly address the issue, but he apparently assumes that the court should apply federal privilege law. *See* Doc. 48, p. 2 (*citing Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 862 (N.D. Cal. 2019) ("Federal privilege law applies in this federal copyright infringement case with pendent state law claims."). The court assumes without deciding that he is correct. *See Davila v. Patel*, 415 F. Supp. 2d 528, 529 (E.D. Pa. 2005) ("Congress intended that federal privilege law apply in FTCA [Federal Tort Claims Act] cases.") (collecting cases); *see also Galarza v. United States*, 179 F.R.D. 291, 293 (S.D. Cal. 1998) ("Because Galarza has brought suit under the FTCA, federal law will govern the application of privilege."); *but see Wright v. United States*, 2020 WL 9723027, at *2 (D. Alaska. Dec. 17, 2020) ("The Court agrees with Plaintiffs that Alaska law governs the applicability of the attorney-client privilege here [in this FTCA action].").

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981). "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id*. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (punctuation modified). "As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege,

but with the party asserting it." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

The first email was sent by Laura Kiesler to Sanchez and Velasquez at the ORR. The message says that "OGC has requested [something]." To be more specific, Kiesler is informing Sanchez and Velasquez that the Office of General Counsel ("OGC") has conducted a certain legal evaluation and, as a result, would like the ORR *to do something*. In the second email, Sanchez asks Velasquez for further instructions as to how ORR can comply with the OGC's request.

The court concludes that disclosure of the emails in unredacted form would reveal, directly or indirectly, communications from the OGC to members of the ORR, that is, from an attorney to a client. The emails are protected by the attorney-client privilege.

In his reply, Mustafa argues that the privilege applies to communications from a lawyer to a decisionmaker and to communications between decisionmakers, but it does not apply when "high-level employees pass directives along to their subordinates, [because] they are merely directing their employees to follow the stated instructions." Doc. 50, p. 2. The court agrees that an email directing an employee to do something shorn of any explanation as to why this thing should be done would not be privileged. This case is different.

Here, the message from Kiesler to Sanchez and Velasquez does not simply say "do something." It says that OGC has conducted a certain legal analysis, which is identified in the email, and would like the person to "do something" in support. The email contains an attorney's advice; it is protected by the privilege.

The second email might, by itself, be unprotected. It is simply a question asking for further instructions about how to "do something." In context, however, it is clear that Sanchez is asking how she might do something that the attorney believes is important to support his or her legal analysis. The second email, therefore, would indirectly reveal a communication from an attorney to a client. It is privileged.

The government argues in the alternative that the emails are protected by the work-product doctrine. Doc. 49, pp. 4-5.

"In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is also called, can protect documents and tangible things prepared in anticipation of litigation that are both non-privileged and relevant." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (punctuation modified). "Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails." *Id*. Courts "recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent." *Id*.

The work-product doctrine is codified at Fed.R.Civ.P.26(b)(3). The rule clarifies that the doctrine covers "documents and tangible things that are prepared in anticipation of litigation *or for trial . . . .*" Fed.R.Civ.P. 26(b)(3)(A) (emphasis added). The rule explains that "[i]f the court orders discovery of those materials [because a party shows, among other thing, "substantial need" for the materials], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed.R.Civ.P. 26(b)(3)(B).

Here, disclosure of the unredacted emails would reveal the "mental impressions, conclusions, [or] opinions" of the OGC. Fed.R.Civ.P. 26(b)(3)(B); *see above*. The emails are protected by the work-product doctrine.

Mustafa argues in his reply that any work-product protection for the emails should be deemed waived. Doc. 50, p. 3. He maintains that a "lawyer cannot share their mental impressions with a supervisor who then transmits it around the agency without any suggestion that it was done in furtherance of preparing his government's case." Doc. 50, p. 3. In this case, however, the email chain states that the attorney would like the ORR to "do something" because

of the attorney's legal analysis in connection with this case. The protection has not been waived.

Assuming without deciding that the emails are relevant, the court finds that they are protected by the attorney-client privilege and the work-product doctrine after having considered the content of the emails *in camera*.

IT IS ORDERED that the plaintiff's implicit motion to compel the production of the two emails in unredacted form is DENIED.

DATED this 14th day of May, 2025.

Honorable Michael A. Ambri
United States Magistrate Judge